Company and others, arguing as not to exceed 15 minutes for the plan of 15 minutes, I have comments to make. Good morning, Your Honor. Just give them a minute here. They're just sitting down, but I'm in favor of moving along. So thank you for your impulse. All right. Welcome. You can start. Good morning, Your Honors. Russell Babcock here on behalf of Rose Anwar. Obviously, I know Your Honors have had a chance to review the briefs, and basically this case is obviously very much hinges on, at least from our perspective, on an assessment of the evidence that was submitted to the district court. In a nutshell, my client had brought discrimination claims against the defendants, and essentially it's our position that the defendants have been utilizing these corporate entities as a shield for liability for their discriminatory actions. And to give the court some procedural background, which I'm sure the court is familiar, there was initially a 12B6 motion that was filed by the defendants. Judge found that there was enough, but then asked that it be converted to a Rule 56 so that the parties could then explore whether or not there would be sufficient evidence in support of the allegations. And essentially, what we have here is we have, with regards to ME Global, we have a massive disagreement amongst the parties as to what the facts and evidence is. And we obviously take issue with the fact that in his subsequent opinion, the district court essentially ignored or downplayed the testimony from my client, as well as the evidence that she provided. How should we think about this case? Is this a corporate form case where you think the defendants are using the corporate form to play games and we should pierce the veil? Or is this a case where, no, no, no, it doesn't matter to the parents and subsidiaries. There's enough overlap that you don't even have to worry about the corporate form. How do we think about this? I mean, I think it's points to be made on both aspects, because they are kind of playing a game here. They're creating shell companies. For example, there was testimony about ME Global Brazil. Piercing the corporate veil is a pretty tough burden, so is that a burden you need to clear to win here? No, I think under whether piercing the corporate veil, the alter ego status, I mean, all those points that we pointed out to the court, I mean, obviously these entities have a certain amount of preferential status. I mean, that's the status that's given by law, but we believe that the evidence that exists here overwhelmingly supports the conclusion that ME Global is, for all practical purposes, one entity. So you argue that the district court improperly took into consideration certain facts from MEG, ME Global. So what are those facts that the district, the key facts that the district court improperly took into account or credited? Okay. Well, first off with ME Global, because there's actually the ME Global issue, then there's the Dow issue. We'll talk about the ME Global. Yeah. That was the one that was the subject of my question. Yeah. With regards to ME Global, there's the fact that there's the same managers are running everything. That the company... They're running ME Global in America? Yes. They're running all of them. That's what the testimony was from my client, is that all these entities fall under one common management. They are... In other words, Ramachandran, I probably just tortured that person's name, was basically oversaw the entire network of companies. My client was working amongst these various companies, and the idea is that there weren't so much... For example, the Brazil issue, the ME Global Brazil was there for tax, for government reasons. It was a shell company. ME Global Mexico was another one she testified to. It was just a shell company. There was nothing to it. Then why'd she sue in Saudi Arabia first? Why is she suing? Where'd she sue first? There was some testimony. There was some litigation of some sort. I don't know the details of that, Your Honor, in the Middle East. I don't know the nature of it, to be honest. I think it's part of the record as to what it was, but I don't recall. It wasn't like Elliot Larson or Title VII or anything like that. It was involving some other legal matter. I thought it was involving her termination. It may have. It may have been under some local laws or whatever, but obviously... But why doesn't that, as a practical matter, suggest, devise where this case belongs? Well, of course, quite frankly, Your Honor, under Title VII and Elliot Larson, these are of the United States and the state of Michigan. If you're employed by Amazon China and you get fired, you can sue in the United States? If the facts are as they are in this case, whereas you have a company that has connections with, is run by and operated by an American company... But you agree that all of these major American corporations have international subsidiaries? I would... I have not researched that. I mean, there probably has been situations as to whether companies have had foreign entities that are associated in some manner. How that relationship between those other companies are related, I don't know. What I do know is, in this case, is that we have all these AmiGlobal companies working as one solitary unit with a... Because the issue is personal jurisdiction, whether or not they had a presence in Michigan. And obviously, AmiGlobal Americas was in Michigan. In fact, they shared the same office space as Dow Chemical. So it's... Certainly, that was the issue with regards to AmiGlobal's personal jurisdiction. With regards to Dow Chemical, on the other hand, the issue with Dow Chemical is whether or not Dow Chemical was the employer of my client. And when we look at the normal criteria, the elements for satisfying the employer-employee relationship, it seems like you've got a problem actually satisfying those very components. And why don't you tell us how you make that case? Well, because my client was directly supervised by a Dow employee. He was... Ramachandran, I think his name was. He was a named party, so it's hard to find him on the caption. But anyway, he was employed by Dow Chemical. He received performance evaluations by Dow Chemical. His predecessor was employed by Dow Chemical, was fired and removed from AmiGlobal by Dow Chemical. That was the testimony from my client, who was a member of management under Mr. Ross' tenure. And she was in a position to know what happened. This is not some low-level employee. This is an employee that knows the inner workings of this company and knows that it's Dow Chemical that removed their boss at AmiGlobal, who was a Dow Chemical employee. It wasn't AmiGlobal that removed him. So the fact of the matter is you have direct control of Dow Chemical overseeing the company. In fact, she goes on to say that AmiGlobal couldn't exist without Dow Chemical. AmiGlobal, when you look at the testimony from my client, it's a very... On paper, it looks like a huge international corporation, but it has a very few number of employees. Is there evidence that anyone from Dow Chemical reviewed the people that supervised your client? In other words, gave employment reviews? Is there anything in the record that shows that? I believe there's some testimony from my client and her testimony about... How would your client have known whether... Well, because she was an AmiGlobal employee. Obviously, she was a member of management. She would know who Dow Chemical was overseeing. I see. Anyway, so she testified that Dow Chemical was supervising or reviewing her supervisors? I remember there was some testimony in her deposition. I don't remember if it's... She comes out and outright says it's Dow Chemical that says the evaluations, if that's what you're asking. It is what I'm asking. Yeah. There was a testimony where she talks about the evaluations, and I think it was a... One second here. During my rebuttal, if I can, I can probably... Sounds like a great plan. All right. But with regards to... But the fact of the matter is she's being supervised by Dow Chemical, and that's... So for Dow Chemical's sake... Because remember... When you say that, you mean derivatively? Literally. I mean, it's a Dow Chemical employee that's running this... You think she's directly being supervised by somebody from Dow Chemical? Yes, yes. That's exactly what we're saying, who happens to be also associated with ME Global. But the fact of the matter is that these are all factual and evidentiary disputes. When you look at my client's testimony, the organizational charge regarding ME Global itself and all that, it becomes clear that there's at least a dispute that exists. This is a motion for summary judgment. It's not trial or bench trial or jury trial. This is the question the court was supposed to take evidence, obviously in the light most favorable to the non-moving party, which obviously was my client. And quite frankly, they make a big... There's also suggestions by district court that we didn't provide more evidence. We sought discovery, and we filed motions to... In addition, by a protect order issued by the district court judge, we sought documents and other testimony, which was subsequently barred in a motion to compel that was denied by the defendant. But the court set some parameters on a narrow issue that you were to address, and that was the employee-employer status. Yeah. So some of the things that you're alluding to now, how do they fit within the parameters of the limitations that he imposed? Well, for example, I'll use Mr. Roth. He was the former CEO of ME Global. He was the predecessor to the named defendant in the case. He was obviously in a position to know, as CEO of ME Global, what the interplay between Dow Chemical and ME Global was. He was also in a position to know the interplay between the various entities within the umbrella of ME Global. Yet, we were precluded from taking his deposition. But you couldn't get that through documents? Which we also attempted to seek through a discovery request, a motion that was denied by the defendant. Not by the defendant, denied by the trial court, not the defendant. Can I ask one more question about the Dubai lawsuit? Yes. She did get severance compensation from that, correct? There was, if I remember right, and I'm drawing my memory here, there was some issue about she had to get up to two years back pay, if I remember something along those lines. She got that because of the lack of notice, not because of any wrongdoing on her part? That could very well be what it was. I don't remember. All right. Mr. Honors, I know my time is up. Thank you. We've got two folks on the other side here. Ms. Stocker. All right. I won. Thank you. What's at stake here is nothing less than the constitutional guarantee of due process to an out-of-country company. I am Jennifer Stocker and I represent that out-of-country entity, ME Global International, FZE, which I will be strict about referring to in its individual name. The case concerns the authority of a U.S. district court to entertain a claim brought by a Dubai resident against her Dubai corporate employer based on alleged injuries and events occurring entirely in Dubai and about which she has already sued that employer in Dubai and has received in excess of six figures, which has been paid. Where's the line for extending personal jurisdiction? You argued that it's not here, right? Correct. So where's the line? We're talking about general all-purpose jurisdiction, which is severely limited. The entity, the defendant, has to be at home in that jurisdiction. ME Global Americas has its office and had its offices in Midland and was at home there. It wasn't incorporated there. And it is not the same address as the Dow Chemical Company. I can tell you it's 3323 Ridgecroft and Mr. Nelson can tell you Dow's address. But in any event, the line is that the first presumption is that corporations are separate entities and do not answer for each other. And we agree on that. We both cited that rule. And the second thing we also agree on is that it is only in very limited demanding circumstances that you can disregard that separation. Can I ask you the same question Judge Sutton asked your opponent, which is does Dow Chemical or ME America or someone, do they review ME Global Management? Performance reviews, all that. Who does it? Well, I'll tell you. In the evidence is the review evaluation of Ramesh Ramachandran, also my client. He worked for Dow India, was seconded to ME Global International FCE. He was evaluated by Marcus Wildey of Dow India, even as an ME Global International employee. His name's on the evaluation. Marcus Wildey was at- Not exactly. One important factor is that Marcus Wildey was at one point on the management team for ME Global BV, the ultimate joint venture. Okay, so back to the question. Do Dow employees review ME Global employees' performance? No. If I may. We also agree on what the test is. The test is that plaintiff must at least give some evidence that these two companies, in this case ME Global Americas and ME Global International FCE, are mere instrumentalities. And the first way to do that, the gatekeeper on that, is that they're in the nature of a parent and a sub. And that is not present here. The elephant in the room, of course, is that there was never- We're over two years down the road on this case, and we are here on the basis of a single phrase in paragraph three of the complaint that says, ME Global International FCE does business as ME Global Americas. There's not a single material element alleged of alter ego status anywhere. There's not been any attempt to amend that complaint. So 12 briefs later, hundreds of hours and thousands of dollars later, we're here on the basis of that single allegation. So the discovery that was conducted, was it conducted in connection with the summary judgment motion in Dow, or was it conducted in connection with the motion to dismiss for lack of personal jurisdiction with respect to- It was permitted as regards both. I have real concerns, and I'll tell you, I don't think it was conducted as regards the personal jurisdiction issue. That's what I'm asking. In other words, normally the judge would give someone an opportunity to find out what's going on, and you're saying they didn't conduct discovery as to this issue as opposed to the claim against Dow? Let me tell you, we got 11 interrogatories that applied to us that we answered. We got 12 requests for admissions, which we denied. 17 document requests, which we provided. ME Global Americas is in counsel's backyard. It's subject to subpoena. And that's the entity they're saying is the alter ego here. They didn't seek a single deposition, a single document from ME Global Americas. Maybe they thought you were alter egos. They only had to ask your client. And they got information from us. And I'll tell you, we don't, you know, what the court found, we don't necessarily disagree with. There's a management team. It is appointed by the ultimate parent, ME Global BV. Now, in terms of that management team, and I want to correct the record on this, is that plaintiff's testimony was that that management team did all major direction setting. Well, that doesn't sound like day-to-day, right? That that management team handled escalations when the individual, and she calls them legal entities, at separate locations, that admission is in the record from plaintiff, not from us, also from us, that they would handle escalations when the individual local entities could not resolve their problems under the master services agreement with Dow. They were escalated up to this management team and resolution was sought. Telling is plaintiff's testimony that I cite in our brief that she was not a member of the management team. She says, I was on the website at one point saying that I was, but I never actually attended a single meeting. I might have seen some agendas on somebody's desk about it. I do not know of a single decision they made. So I want to go back a little bit and just ask you, the fact that these two companies are in different countries, that in and of itself doesn't foreclose a finding of personal jurisdiction, does it? I mean, aren't there factors that one could look at? I mean, you could find personal jurisdiction where they're in different countries, correct? I think you could. I know you're saying that's not the case here. Well, I'm saying more than that, though. I think it is more difficult here because although these companies are in the business of selling glycol and manufacturing, in some cases, glycol, not my client. My client didn't manufacture glycol. So it's hard to see how it could be the alter ego of, for instance, Canada, where they did manufacture it, and where ME Global Americas does now manufacture it in Texas. You can keep going, but you're using Mr. Nelson's time, if you want. Just let me finish my point. Thank you. They are in that enterprise. They are in that industry. But my client can't sell here. And ME Global Americas cannot sell in Asia. So in that respect, they're not. Thank you for your time. I submit that this case can be decided precisely on what was not shown, and that is the focus of the district court's order, which we ask you to affirm. Thank you. Thank you. Mr. Nelson. Good morning, Your Honors. Matthew Nelson on behalf of the Dow Chemical Company. May it please the Court. Under Michigan or federal law, it would require highly unusual facts for a corporation to be a statutory employer of an employee of a partially owned subsidiary 13 levels removed. This case does not have those extraordinary facts. Ms. Anwar worked for ME Global FCE, not for Dow, and Dow did not exercise undue control over her employment. Therefore, the district court did not urge Dow to review any of her supervisors. Dow did not. So if you look at the corporation flow chart that we have early on in our brief, you'll see that there are the various 13 levels. And Mr. Ramachandran was an employee of DeComco, which is a wholly owned subsidiary of Dow, but is not Dow itself the party to this lawsuit. He is an employee of DeComco who is seconded to a partially owned subsidiary 12 levels removed from that. So if at least one of her supervisors had reporting duties, responsibilities to somebody in Dow leadership at a senior level, that's not enough to get her there? Yes, absolutely. My point is actually, first of all, that he wasn't employed by Dow. You just said he was employed by Dow. He was employed by a wholly owned Dow subsidiary called DeComco, Dow Chemical Overseas Management Company. But even if that were the case, as the district court assumed, even if you were to assume that somehow he had some sort of duties to Dow such that Dow was his actual employer, there's no evidence in this record that somehow through that relationship Dow exercised control over Ms. Anwar's workplace. In fact, all of the testimony with regards to Mr. Ramachandran is that he owed 100 percent of his duties to ME Global FCE, that he exercised his duties in that way. And the district court even reached the conclusion in its analysis that Dow didn't even have any knowledge of the challenge conduct that was occurring here. There is absolutely no evidence that ties Dow Chemical Company to what happened in Dubai with regard to Ms. Is there any way as a practical matter this woman can invoke Title VII? Is there any entity that she can invoke Title VII against? I mean, I got the point that she's used Dubai law and gotten something and one can make the argument enough is enough. But let's say that's not right. And how would she go about doing that? Who could she sue and how would you do this if she wants to be protected by Title VII, which let's just say for sake of argument is a lot better than the Dubai law when it comes to protecting her? I'm not aware of any way in this particular case where she would be able to invoke Title VII. And that's because she can't get jurisdiction over the proper defendant or because the proper defendant wouldn't be covered by Title VII? Because the proper defendant, her actual employer, well, the reason is Congress limited Title VII to employers. Her employer is ME Global FCE, which is a Dubai entity, conducted all of its operations in Dubai and all of the conduct occurred in Dubai. Consequently, it is not an employer subject to Title VII. So an American that goes to work abroad, you're just kind of stuck if that's the way it works? I mean, I'm not accusing you of anything. I'm just trying to figure it out. Well, certainly. And she gets the advantages of Dubai law. And to the extent that there are advantages that she wishes she had from U.S. law, she just doesn't have access to them. In the same way that if she had gone to work for a foreign entity that has no connection to any U.S. entity, there would be no way for her to invoke any sort of access to U.S. law based solely on the fact that there might be a shareholder, immediate or indirect, in that company who happens to be a U.S. citizen. That wouldn't be sufficient, and nor is it sufficient here. And I would suggest that that is the effect of the Best Foods decision from the Supreme Court. So to try to directly answer your question, Judge Sutton, the fact of the matter is, no. She does not have access to Title VII because her employer is a Dubai entity, and she chose to work in Dubai subject to the laws of Dubai with a contract in Dubai and, frankly, got a benefit in Dubai she wouldn't have gotten in Michigan in terms of having to essentially have had a reason for her termination that she had adequate notice of. Judge Tappar, you asked about the evaluations. They're available at page IDs 1464 through 1471 in the record. And as my co-counsel or as counsel for ME Global pointed out, Marcus Wilde was the evaluator there, and he is also not an employee of the Dow Chemical Company. Very briefly then turning to, unless the Court has further questions about that. No, no. Very briefly with regard to the discovery, I would submit to this Court that the issue with regard to the written discovery has been forfeited or waived, whatever the proper term is, for failure to object to the magistrate's ruling because the magistrate judge's ruling was not objected to. That issue is gone. With regard to the depositions, there just is not an abuse of discretion here. Unless the panel has further questions, I'll cede the balance. Thank you, Mr. Nelson. We appreciate it. Mr. Babcock, you've got a few minutes here. Very briefly, Your Honors, Judge Sutton. I did look back and where I think it was you that asked me the question about that, and if you look at 1254, I want to make sure I'm clear. I don't want to misrepresent the Court's testimony. What it was is that the testimony was, of course, that MA Global managers, of course, that's the testimony of our Dow employees, i.e. Ramashana was being one of them. The managers do the evaluations of the employees, so it's Dow employees that's doing the evaluations of the employees, including my client. So the hierarchy is that. Now, you keep hearing the word. Is that what Mr. Nelson just said in terms of his record citations? Yeah, his argument is that the evaluations aren't done by Dow employees, but that's completely contrary to the testimony that was provided by my client in her deposition, which was that it was Dow employees that were doing it. Can you tell us where that is? I know we've cited it in our brief. Okay, all right. Whatever's in your brief, we'll rely on. And her testimony is also part of the, it's a very short deposition, and she summarized it, especially if you look at from 1259 onwards in particular, there's a great deal of discussion about the interplay between Dow Chemical and the fact that they're intertwined with MA Global. And unless Your Honors have any questions, quite frankly, this is an evidentiary dispute. There's reported evidence from the defendant. There's evidence and testimony from my client. When you say there's an evidentiary dispute, that must mean you're focusing on the Rule 56 motion with respect to Dow as opposed to the lack of personal jurisdiction with respect to MEZ Gold. No, the judge converted both into Rule 56. He did both the personal jurisdiction as well as the That's pretty strange. I mean, lack of jurisdiction is 12B2. But when you read his opinion, if I remember correctly, he converted everything over to a 56. But you often have discovery in connection with jurisdictional motions. It sounds like you've got it. And counsel for MEZ Global just said you didn't use all of it that you could have. But when you talk about discovery, I assume you're talking about Rule 56 and Dow. Am I right about that or not really? And again, maybe that's perhaps how the judge tailored it. I mean, certainly there was an evidentiary dispute on personal jurisdiction. But the judge says that his order is granting ME Global's motion to dismiss their and ME Global International's motion for lack of personal jurisdiction. Right. And he says at page 6 that presented with a properly supported 12B2 motion in opposition, the court has three procedural alternatives. And he goes through what he can do. So he clearly understood what he was doing. Well, and again, it was an evidentiary dispute. And one thing you didn't hear anything about at all was the fact that the judge would not allow us to take Henry Roth, the CEO of ME Global, who was also a Dow employee. No mention was made at all by defense counsel. That was a result to a motion for protective order, which was granted by the court barring us. Well, those are abusive discretion reviews. And I think – Did you appeal that? Yes, we did, Your Honor. We appealed to the fact that we were not allowed and permitted to take his deposition. And the fact of the matter is that he was the CEO of the company. But we don't even need that. We have our client's testimony. Again, this is a factual evidentiary dispute. Okay. All right. I think we got it. Thank you very much. Thank you very much for your time, Your Honor. I appreciate all three of your briefs and oral arguments. Thanks so much. The case will be submitted, and the clerk will close.